**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| *Plaintiff*, | * | Case No. 1:22-CR-310 (APM) |
| V. | * | |
| BILAAL BRIGGS, et al., | * | |
| *Defendants.* | * | |

## DEFENDANT BILAAL BRIGGS' MOTION FOR PRETRIAL RELEASE

Pursuant to 18 U.S.C. § 3145(b), Bilaal Briggs, through undersigned counsel, respectfully seeks release on bond, to the custody of his mother, Paulette Williams. The Pretrial Services Department indicates that Mr. Briggs is eligible to participate in the High Intensity Supervision Program, and it has kindly screened and approved Ms. Williams as a third-party custodian.

Mr. Briggs has never been arrested before this matter, much less convicted of any crime, and has no history of weapons possession or violence. He shares custody of his 13-year-old daughter, who is suffering from Stage IV ovarian cancer and relies on her father's physical presence and comfort as she copes with this very serious illness. Born and raised in the District of Columbia, Mr. Briggs also has other significant connections to the community. Most of his immediate and extended family, including his mother, sisters, and daughter, live locally. Mr. Briggs has a steady income from his freelance work as a promoter for local venues (restaurants, lounges, bars, etc.).

The government does not allege that Mr. Briggs engaged in any specific acts in furtherance of the alleged conspiracy after at least December 2, 2021[1] (over nine months before his arrest), nor has it alleged that Mr. Briggs distributed fentanyl, possessed any weapons, nor committed or threatened any acts of violence. In light of the above, we respectfully submit that conditions of release exist that are sufficient to reasonably ensure that Mr. Briggs will not pose a danger to the community and will attend all required Court proceedings. He is willing, of course, to comply with any conditions the Court imposes.

**Procedural History**

Mr. Briggs is charged by indictment with violating 21 U.S.C. § 846, conspiracy to distribute and possess with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl. Five other individuals are also charged with that crime and others. Mr. Briggs was arrested, without incident, on September 20, 2022. He is currently detained at the Alexandria Detention Center in Alexandria, VA.

On September 21, 2022, Mr. Briggs made his initial appearance before U.S. Magistrate Judge G. Michael Harvey. The government indicated that it would seek to detain all defendants pending trial. On September 23, 2022, Magistrate Judge Harvey arraigned Mr. Briggs and ordered that he be detained pending trial. Judge Harvey found that Mr. Briggs' history and characteristics weighed in favor of release, as did Mr. Briggs' likelihood of attending future court dates. He found, however, that the nature and circumstances of the offense, and the weight of the evidence against Mr. Briggs, weighed in favor of detention.

---

[1] The date stated in the government's memorandum is "December 2, 202**2**" (ECF No. 6, at *8) (emphasis added). Since that date has not occurred yet, the undersigned assumes in good faith that the government's memo is referring to either 202**1** or 202**0**.

Mr. Briggs appeared before this Court for a status conference on September 30, 2022. The next status conference is scheduled for December 2, 2022. On October 11, 2022, this Court released one of Mr. Briggs' co-defendants, Laura Garvin, to the custody of her father.

**Legal Standard**

A district court reviews a magistrate judge's pretrial detention order *de novo*. *See U.S. v. Chrestman*, 525 F. Supp. 3d 14, 24 (D.D.C. 2021). Determinations regarding pretrial detention are governed by provisions of the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, which provides that a person charged with an offense shall be released on his own recognizance or an unsecured appearance bond, unless the Court determines that such release will not reasonably assure the person's appearance as required or will endanger the safety of another person or the community. *See* 18 U.S.C. § 3142(g). As the Supreme Court has explained, "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose.").

Certain charges, including the drug offense with which Mr. Briggs is charged, carry a rebuttable presumption that no conditions will reasonably assure the safety of the community. *See* 18 U.S.C. § 3142(e). The rebuttable presumption does not modify or limit the presumption of innocence (*see* 18 U.S.C. § 3142(j)), and "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) (Kennedy, J.). Generally, courts should refuse pretrial release "[o]nly in rare circumstances" and "only for the strongest of reasons" (*id.* at 1405, 1406).

To overcome the presumption, the defendant must "offer some credible evidence contrary to the statutory presumption." *United States v. Alitishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). The

burden is "not heavy" and only requires the production of "some evidence". *United States v. Bustamante-Conchas*, 557 Fed. Appx. 803, 806 (10th Cir. 2014). However, "[t]he presumption shifts the burden of production, not the burden of persuasion." *United States v. Jessup*, 757 F.2d 348, 386 (1st Cir. 1985) (Breyer, J.). The government still retains the burden of persuasion, to show either: (1) by a preponderance of the evidence, the defendant is more likely than not to flee; or (2) by clear and convincing evidence that detention is necessary to ensure the safety of the community. *See United States v. Jessup*, 757 F.2d 348, 384 (1st Cir. 1985) (Breyer, J.).

The Court must evaluate four factors to determine whether conditions of release could be imposed that would reasonably assure a defendant's presence and not put the community at risk. These factors include: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the person's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

## Argument

The government cannot meet its burden of showing that Mr. Briggs is more likely than not to flee, nor that Mr. Briggs poses a danger to any person or the community if released.

### I. Mr. Briggs rebuts the presumption of detention with credible evidence.

Congress' rationale for applying the rebuttable presumption of detention specifically to serious drug offenders is summarized succinctly by the First Circuit: "To prevent pretrial flight." *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985) (Breyer, J.). The Senate Judiciary Report related to the Bail Reform Act states:

> Furthermore, the Committee received testimony that flight to avoid prosecution is particularly high among persons charged with major drug offenses. Because of the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established

4

> substantial ties outside the United States from whence most dangerous drugs are imported into the country, these persons have both the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences. Even the prospect of forfeiture of bond in the hundreds of thousands of dollars has proven to be ineffective in assuring the appearance of major drug traffickers.

S. Rep. No. 225, 98th Cong., 1st Sess. 16 (1983). Indeed, the Congressional record is replete with indicia that the heightened risk of flight was Congress' key concern when considering whether to apply the rebuttable presumption of detention to serious drug offenders. *See United States v. Jessup*, 757 F.2d at 396-98 (appendices excerpting Congressional hearing testimony).

The Magistrate Judge found that Mr. Briggs' low flight risk and history and characteristics weigh in favor of release. We submit that Mr. Briggs has an uncommonly compelling reason not to flee or endanger the community if released. His 13-year-old daughter, Z.B., is suffering from Stage IV ovarian cancer and uses a chest port for chemotherapy.[2] If released, he will take the utmost care not to jeopardize the opportunity to be present for her. Z.B.'s physician, Caileigh Pudela, M.D., of Medstar Georgetown University Hospital's Division of Pediatric, Adolescent, and Young Adult Hematology Oncology department, writes:

> Prior to Mr. Briggs' arrest, he was actively involved in his daughter's care and past treatment course. I have learned from multiple family members that Mr. Briggs' incarceration has brought Z.B. much distress which is concerning due to her age and history of cancer. In addition, Mr. Briggs was providing childcare to Z.B. as she stayed at his residence part-time. Therefore, I respectfully request that Mr. Briggs be released from detention while awaiting upcoming trial(s) and allowed to reunite with his daughter so that he can continue to provide her emotional support and childcare.

---

[2] To protect Mr. Briggs' minor daughter's medical privacy, the undersigned refers to her by her initials, Z.B., and requested that individuals who wished to provide letters of support do the same.

5

Ex. 1 (letter from Caileigh Pudela, M.D.). Mr. Briggs and Z.B.'s mother, Shanita Womack, share custody of Z.B. informally and amicably, and Mr. Briggs and Z.B. talk on the phone every day when she is at her mother's home. Z.B. is accustomed to having her father's presence and comfort, and his incarceration has added tremendous stress to her already precarious condition. Ms. Womack writes:

> Bilaal is very active in her life. He is a caregiver, takes her to her appointments, stays overnight at the hospital, and steps up when I need him to. ZB has currently gone through three major surgeries. Bilaal plays a big part in ZB life, not only emotionally and mentally but financially as well. As she is participating in chemotherapy to help with reducing the spread of her cancer as well as helping her overcome the changes in her life. He financially steps up to make sure her needs are met… His present is needed to be in his child's life to assist her and me through this unprecedented. Due to these circumstances that are beyond us on the behalf of ZB.
>
> I come to the courts humbly to request for Bilaal Briggs to be released from detention while awaiting trial. His presence at home will help me provide the support my daughter needs as he awaits trial.

Ex. 2 (letter from Shanita Womack). Other individuals have also provided letters attesting to Mr. Briggs' good character. *See* Ex. 3-6.

Further, Mr. Briggs has no criminal history, either as an adult or juvenile. There are no allegations of violence against him. He was born and raised in D.C. Most of Mr. Briggs' family and friends live either in D.C. proper or in the D.C. metro area, and he has no significant international ties. Mr. Briggs has been consistently working as a freelance promoter for local food and entertainment venues for about the last two years and can continue doing so if released. Nearly ten months lapsed between the latest allegation against Mr. Briggs (December 2, 2021) and his arrest (September 20, 2022). At no point before or during his arrest did he attempt to flee.

The Pretrial Services Department has screened and approved Mr. Briggs' mother, Paulette Williams, as a third-party custodian. She is retired from the Library of Congress, is home during the day, and will take seriously her promise to report any violations of release conditions. Mr. Briggs' older sister and 18-year-old niece also live in the home. He has other relatives and friends in the D.C. metro area who have no criminal history and comprise a strong support system.

## II. The government cannot show that Mr. Briggs is a flight risk or danger to the community.

The D.C. Circuit recently reiterated the clear and convincing standard that the government must meet to justify detaining a defendant as a danger to the community: "The crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, . . . a court may disable the arrestee from executing that threat. . . . Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community." *United States v. Munchel*, 991 F.3d 1273, 1282-83 (D.C. Cir. 2021) (quoting *Salerno*, 481 U.S. 739, 751 (1987)); *see also United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) (explaining that theoretical danger to the community is insufficient; the danger must be actual). The government has not and cannot meet its burden as to Mr. Briggs.

### 1. Nature and circumstances of the offense

Mr. Briggs is alleged to have conspired with the other defendants to distribute more than 400 grams of a substance and mixture containing a detectable amount of fentanyl. He allegedly operated a desktop pill press in his then-residence and allegedly exchanged drug-related text

messages with Defendant Collin Edwards.  Two orders for (lawful) pill binding agents were allegedly placed using his email account and phone number.

There are no allegations against Mr. Briggs relating to the Laurel residence or the Navy Yard residence.  There are no allegations that Mr. Briggs distributed any substances, used or possessed weapons, nor engaged in violence or threats of violence.

**2. Weight of the evidence**

The weight of the evidence is the least important factor in the Court's analysis.  *See United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018) ("Even overwhelming evidence of guilt would not, alone, meet [the clear and convincing standard].").  The evidence the government cites in its memorandum include a photograph allegedly showing Mr. Briggs using a desktop pill press at his then-residence, an alleged admission that it is him in the photograph, another photograph of a pill press (by itself) allegedly taken at Mr. Briggs' then-residence, three alleged text message exchanges, and two alleged online orders for pill binding agents.  The government also cites a "note" allegedly found in Defendant Garnell Lucas' iCloud, which states:

> Work breakdown
> $10 Blu @ 200
> $2000
> B $8.00
> $1600
> Me $400
>
> 400 Blue
> =4000
> B $3200
> Me $800

ECF No. 6, at *10. The government proffers that this "appears to be an 'owe sheet' discussing the breakdown of responsibility and debts between Lucas and Briggs." *Id.* The government cites no evidence that the alleged note is, in fact, an "owe sheet" or that "B" refers to Mr. Briggs.

The government provides no dates for the photographs or the alleged "owe sheet". The government does not allege that Mr. Briggs had any drug-related text message exchanges with Mr. Edwards within the last 18 months. The government's proffer that the pill binding agents were ordered on November 23, 2022 and December 2, 2022 cannot be true, as those dates are yet to occur. Assuming arguendo that the government meant to refer to those dates in the years 2020 or 2021, there are no allegations that Mr. Briggs took any action in furtherance of the conspiracy within approximately the last year, at a minimum.

### 3. Mr. Briggs' history and characteristics

Mr. Briggs is 32 years old and has no criminal history whatsoever prior to this case, neither as an adult nor juvenile. As mentioned above, he was born and raised in D.C. and has few meaningful ties outside the area. Most of Mr. Briggs' family and friends live either in D.C. proper or in the D.C. metro area, and he has no significant international ties. His 13-year-old daughter, of whom he shares custody, is suffering from Stage IV ovarian cancer and relies on Mr. Briggs for support.

Before the pandemic, Mr. Briggs worked for American Airlines at a local airport, but like many in the tourism industry, he stopped working around March 2020 due to the pandemic. He did, however, continue to receive half his usual pay and benefits. During the time period relevant to the indictment, he was living in his mother's home. Mr. Briggs has been consistently freelancing as a promoter for local food and entertainment venues since late 2020, and before his

arrest, he was living in his own apartment here in D.C. The undersigned's understanding is that if Mr. Briggs is released, he can continue earning a living through freelance promoting.

Mr. Briggs will continue to have significant family support moving forward. As mentioned above, his mother, sisters, and daughter all live locally. None of them have any criminal, substance abuse history, or gang affiliations. Moreover, the Pretrial Services Department has approved his mother as a custodian, and his sister and adult niece also live in the home.

**4. Nature and seriousness of the danger to the community if Mr. Briggs is released**

The dangerousness analysis is a "specific, forward looking assessment of whether" the individual "currently pose[s] an unmitigable threat to public safety." *United States v. Munchel*, 991 F.3d 1273, 1286 (D.C. Cir. 2021) (Katsas, J., concurring). It is not a "generalized, backward-looking assessment" of the offender or crime. *Id.*

The Magistrate Judge based his decision to detain Mr. Briggs on the generalized danger of fentanyl to the community and the possibility that the defendants would continue fentanyl-related activities if released. The unlawful distribution of fentanyl is, of course, dangerous to the community. But the relevant inquiry here is whether Mr. Briggs currently poses an unmitigable threat to public safety. The government has not and cannot cite evidence that he is.

The government's contention that Mr. Briggs is currently so dangerous that he must be detained while awaiting trial is undercut by the long lapse between the most recent specific allegation (December 2021 at the latest) and his arrest (September 2022). We respectfully submit that it is further undercut by Mr. Briggs having a young daughter with Stage IV cancer. That is to say, he will be far more motivated than the average defendant to abide meticulously by

10

the Court's conditions and stay by his daughter's side. Finally, Mr. Briggs' mother agrees to take on the responsibility of being his third-party custodian.

## CONCLUSION

For the foregoing reasons, the government has not met its burden of showing that no conditions exist that will reasonably ensure the safety of the community and Mr. Briggs' appearance at future court proceedings. He is willing to comply with any conditions imposed by the Court, and his family (including his proposed third-party custodian, mother Paulette Williams) will support him in any way they can.

Date: November 29, 2022  Respectfully submitted,

*/s/ Barry Coburn*
Barry Coburn (D.C. Bar No. 358020)
Coburn and Greenbaum, PLLC
1710 Rhode Island Ave., NW
Second Floor
Washington, D.C. 20036
Tel. (202) 643-9472
Fax (866) 561-9712
barry@coburngreenbaum.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of November, 2022, I caused a true and correct copy of the foregoing to be filed via the Court's electronic filing system, which shall service copies upon all counsel of record.

*/s/ Barry Coburn*
Barry Coburn